IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| XIAMEN OCEAN SHIPPING CO; ) | CIVIL NO. 12-00082 LEK-KSC |
| LIANYUNGANG COSFAR SHIPPING ) | |
| INTERNATIONAL CO. LTD.; ) | |
| STEAMSHIP MUTUAL UNDERWRITERS ) | |
| ASSOCIATION (BERMUDA) ) | |
| LIMITED, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are: (1) Plaintiffs Xiamen Ocean
Shipping Co., Lianyungang Cosfar Shipping International Co. Ltd.,
and their underwriters in interest Steamship Mutual Underwriters
Association (Bermuda) Limited's (collectively "Plaintiffs" or
"Claimants") Motion for Summary Judgment ("Plaintiffs' Motion"),
filed on August 31, 2012; and (2) Defendant United States of
America's ("Government") Motion for Summary Judgment
("Government's Motion"), filed on August 31, 2012.  The parties
filed their memoranda in opposition on November 19, 2012, and
their replies on November 30, 2012.  Pursuant to Rule LR7.2(d) of
the Local Rules of Practice of the United States District Court
for the District of Hawai`i ("Local Rules"), the Court finds
these motions suitable for disposition without a hearing.

After careful consideration of the motions, supporting and opposing memoranda, and the relevant legal authority, the Court HEREBY DENIES Plaintiffs' Motion and GRANTS the Government's Motion.

### BACKGROUND

This action seeks judicial review of the decisions and final agency action of the United States Coast Guard National Pollution Funds Center ("NPFC") denying Plaintiffs' claim pursuant to the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, et seq., for the reimbursement of uncompensated damages and removal costs incurred in connection with the discharge of oil from the MV TONG CHENG into the navigable waters of the United States following a January 6, 2007 incident ("OPA incident"). Plaintiffs contend that the OPA incident was caused by a third party. Plaintiffs' Amended Complaint sets forth the following factual allegations:

> 8.   On January 6, 2007, the MV TONG CHENG was en route from her last load port at Pusan, Korea, across the Pacific Ocean and bound for the Panama Canal. During a routine daily inspection of her bilges, the crew determined that the vessel had started to take on water in her No. 2 Hold.
> 9.   Upon further examination by the officers and crew of the MV TONG CHENG, it was confirmed that seawater was entering the No. 2 Hold through three (3) small cracks in the vessel's hull plating and two (2) additional longer cracks in the hull plating closer to the "tank top," i.e. floor or deck plating, of the hold.
> 10.   At the time the damage was initially discovered, the MV TONG CHENG's position was 170° East by 12° North, placing it approximately 1,700

2

to 1,800 to the southwest of Hawai'i.  As the
bilge pump was keeping up with the water ingress
in Hold No. 2, the vessel maintained her planned
course.

11.   Emergency repairs were planned and
executed by the officers and crew of the MV TONG
CHENG by January 8, 2007.  These emergency repairs
involved the installation of a temporary
steel-backed rubber patch over the discovered
cracks in the hull.

12.   As a result of the emergency repairs,
the bilge pump servicing the No. 2 Hold was able
to reduce and maintain the water level in the hold
to about 4 inches.

. . . .

18.   As the sea water flooding into Hold No.
2 could no longer be controlled and the vessel
faced the risk of sinking and/or breaking, the
Master of the MV TONG CHENG decided that the
vessel must head for a port of refuge to save his
crew and vessel as well as to control and address
this dangerous situation.

19.   At noon on January 9, 2007, the MV TONG
CHENG altered course and headed for Barbers Point,
Oahu, Hawai'i, which was the closest port of
refuge and approximately 1,344 nautical miles
away.  At that point, the vessel was only about 65
nautical miles from the 200 nautical mile
Exclusive Economic Zone ("EEZ") of United States
possession Johnston Atoll, a collection of small
islands and coral reefs.

. . . .

23.   On January 14, 2007, the Chief Officer
of the MV TONG CHENG confirmed to the Master that
fuel oil was seen in the water flooding the No. 2
Hold.

24.   The MV TONG CHENG continued towards
Hawai'i and was contacted by the United States
Coast Guard ("Coast Guard") at approximately 2030
hours on January 17, 2007.  The vessel was sighted
by a USCG cutter the same day at about 2100 hours.

25.   On January 18, 2007, the Coast Guard
ordered the MV TONG CHENG to remain 70 nautical
miles offshore from Oahu, Hawai'i.  The Coast

Guard cutter WALNUT was dispatched to the vessel to conduct a safety assessment and minimize potential environmental impacts.

    26.  A United States Navy salvage team, which accompanied the Coast Guard cutter WALNUT, recognized the severe threat presented by the flooded hold of the MV TONG CHENG and attempted to pump the contents of the No. 2 Hold overboard even though a spotty sheen of fuel oil was observed in the sea water surrounding the MV TONG CHENG.

    27.  From January 19th through the 22nd, the Coast Guard assessed the situation, and the Navy salvage team conducted open ocean dive inspections of the damaged hull and affected temporary repairs.

    28.  Between January 22nd through the 26th, the MV TONG CHENG remained at anchorage off Oahu for dewatering and temporary repairs that resulted in lowering the water level in the No. 2 Hold from about 25 feet to 18 feet.

    29.  On January 26, 2007, the MV TONG CHENG entered Barbers Point Harbor.

    30.  By January 27, 2007, the cargo was unloaded from the vessel, the waterlogged debris (i.e. loose cargo) was removed, the No. 2 Hold was decontaminated, and the temporary repair of the damaged hull plating of the MV TONG CHENG commenced.  Attending tug boats and pollution mitigation equipment were deployed at the scene at all times.

Plaintiffs incurred approximately $8 million in costs, damages, and expenses as a result of the incident.  They filed a claim for reimbursement with the NPFC on November 20, 2008, which the NPFC denied in its October 1, 2010 Determination ("10/1/10 Determination").

The NPFC determined that Plaintiffs failed to establish that an unknown third-party, defined by 33 U.S.C. § 2703, solely caused the incident, and that the Master and crew proximately

caused the incident by seeking a port of refuge in Hawaiʻi.[1]
Plaintiffs requested reconsideration of the 10/1/10
Determination.  In a Determination on Reconsideration, dated
July 8, 2011, the NPFC again denied the claim for the same
reasons ("7/8/11 Determination").  [NPFC-000583 - NPFC-000591.]
The NPFC determined that Plaintiffs did not establish by a
preponderance of the evidence that the substantial threat of a
discharge was caused solely by a third party, and that vessel
caused the substantial threat of a discharge of oil when the
Master sought refuge at the Port of Honolulu.  [Id.]

        Plaintiffs contend that the NPFC's final agency action
was arbitrary, capricious and an abuse of discretion, or
otherwise not in accordance with the law.  [Amended Complaint at
¶¶ 39-43.]

I.   **Plaintiffs' Motion**

        Plaintiffs ask the Court to enter judgment in their
favor and set aside the NPFC's determinations and final agency
action.  They argue that the NPFC erred when it concluded that
the Plaintiffs failed to establish that an unknown third-party
solely caused the incident, and that the Master and crew

---

        [1] The Administrative Record (NPFC-000001 - NPFC-001104) is
attached in an electronic format as Exhibit A to Plaintiffs'
Separate Concise Statement of Facts in Support of Plaintiffs'
Motion ("Plaintiffs' SCSF"), Declaration of Christian K. Adams.
The 10/1/10 Determination is located at NPFC-000344 -
NPFC-000353.

proximately caused the incident by seeking a port of refuge in Hawai'i. [Mem. in Supp. of Plaintiffs' Motion at 1.]

Plaintiffs rely on the report of their hull expert, Douglas Granger, regarding the nature and cause of the damage to the vessel's hull. Mr. Granger attended on board the vessel from February 6 until March 7, 2007, and witnessed the dewatering, cargo and debris removal and decontamination operations, the physical inspection of the hull plates, and the temporary repairs. He also attended the vessel during her dry docking and permanent repairs in Shanghai from April 11 to April 26, 2007. [Id. at 10-12 (citing NPFC-175 - NPFC-132).] Given the nature of the damage, including scrapes, linear cracks and indentations, and gouges, Mr. Granger concluded that the object responsible for the damage was a partially or fully submerged, man-made oceangoing container or heavily reinforced packing case. Plaintiffs insist that "the TONG CHENG was struck by an object in the ocean that was abandoned or lost by an unknown third-party. Therefore, the OPA incident was solely caused by the unforeseeable acts or omissions of an unknown third-party, not contractually connected to the Plaintiffs." [Id. at 13.]

Plaintiffs maintain that the NPFC improperly heightened the burden of proof, and that they are not required to show precisely when the contact occurred, identify the exact object which struck the vessel, or specifically identify the object's

6

owners.  [Id. at 20.]

They also argue that the NPFC incorrectly determined that the Master and crew were a proximate cause of the incident. Rather, they argue that the "sole cause of the substantial threat of discharge of oil from the TONG CHENG was contact with an unknown and unavoidable semi-submerged object." [Id. at 26-27.] Plaintiffs assert that the TONG CHENG was forced to deviate from its course to seek refuge in Hawai'i, and should not be penalized for seeking a port of refuge.  Plaintiffs note that "[t]he fact that the TONG CHENG was on a voyage from North Korea to Cuba, as expressly noted in the NPFC's determination, is completely irrelevant." [Id. at 31 n.6.]

A.   **Defendant's Opposition**

In its opposition, the Government argues that the NPFC's determinations were not arbitrary, capricious, an abuse of discretion, nor inconsistent with OPA.  [Mem. in Opp. to Plaintiffs' Motion at 6.]

The Government states that Plaintiffs have the burden of proving that the acts of the Master and crew played "no part whatsoever in causing the accident," which they fail to do.  [Id. at 15.]  According to the Government, Plaintiffs acknowledge that they cannot establish exactly what the vessel hit, when the vessel hit the object or who owned the object, and that Plaintiffs argue that the preponderance of evidence standard does

not require them to establish the specifics of what hit the
vessel, when it hit the vessel, and who owned it.  [Id. at 15-
16.]  The Government distinguishes the case relied upon by
Plaintiffs, Gatlin Oil Co. v. United States, 169 F.3d 207 (4th
Cir. 1999), in which the NPFC determined that the claimant had
established entitlement to a sole fault third party defense where
the third party was an unidentified vandal.  [Id. at 17.]

        Next, the Government argues that Plaintiffs'
intentional decision to take the vessel into United States waters
was the proximate cause of the OPA incident.  That is, there
would have been no alleged threat of discharge into United States
waters if Plaintiffs had not created such a threat by taking the
vessel into United States waters, because the damage to the
vessel allegedly occurred in international waters; but for
Plaintiffs' intentional decision, there would have been no OPA
incident.  [Id. at 22-23.]  According to the Government, "it is
almost a certainty that the vessel intended to entirely avoid any
contact with U.S. waters given that . . . it was carrying arms
and other cargo bound for Cuba."  [Id. at 27.]  The Government
argues that, once the Master decided to deviate from his intended
course to Cuba and transit through United States waters, only
then, could an OPA incident potentially occur in waters protected
by OPA.  [Id. at 28.]

The Government contends that Plaintiffs are not penalized for seeking refuge at the Port of Honolulu, but that "it was the decision of the NPFC that the United States should not be penalized in this case by absorbing OPA removal costs and damages resulting from a vessel's use of an American Port as a port of refuge." [Id. at 26.]

B.  **Plaintiffs' Reply**

In their reply, Plaintiffs assert that they have shown by a preponderance of the evidence: (1) that the vessel flooded as the result of ingress of sea water into the hold through cracks in hull plates caused by contact with an external object; (2) that the contact occurred during the night of January 5 into the early morning of January 6, 2007; and (3) that Plaintiffs took reasonable precautions against this occurrence by maintaining proper strength and thickness for the vessel's hull plates in accordance with industry standards and posting a proper lookout in compliance with international regulations.  They maintain that the NPFC determinations "have no rational connection to the facts in the record."  [Plaintiffs' Reply at 11.]

Plaintiffs fault the Government for focusing on irrelevant facts, such as the vessel's cargo and destination, its distance from Hawai'i, and the amount of Plaintiffs' claim.  [Id. at 3-4.]

9

## II.  __Government's Motion__

         The Government seeks dismissal of Plaintiffs' Amended
Complaint, and asserts that it is entitled to summary judgment in
its favor because the NPFC's decision to deny Plaintiffs' claim
was not arbitrary, capricious, an abuse or discretion, or
otherwise not in accordance with law.  It argues that

> the ultimate goal of plaintiffs was to have the
> [Oil Spill Liability Trust Fund ("OSLTF")] pay
> plaintiffs sums that included repairs to the
> vessel that existed long before the vessel entered
> United States waters and, indeed, existed at a
> time when the vessel had every reason to avoid
> United States waters and jurisdiction due to the
> nature of military cargo (including ammunition)
> being shipped by the People's Republic of China to
> Cuba.

[Mem. in Supp. of Government's Motion at 2.]

         According to the Government, the NPFC correctly ruled
that: Plaintiffs had not met their burden with respect to the
third-party defense; the Granger Report was not reliable because
it was speculative; and that the Master and crew proximately
caused the substantial threat when they entered United States
waters seeking a port of refuge.  [__Id.__ at 25-29.]  It notes that
there was conflicting evidence in the record, but that the
agency's evidentiary determinations are entitled to deference
because the NPFC set forth a rational connection between the
facts in the record and the decision to deny the claim.  [__Id.__ at
30.]

A.   __Plaintiffs' Memorandum in Opposition__

       In their memorandum in opposition, Plaintiffs assert
that they are entitled to the OPA sole third-party defense, and
that their survey report presented the only rational explanation
for the flooding in the hold.  [Mem. in Opp. to Government's
Motion at 1-3.]  Plaintiffs insist that the flooding was
discovered during a routine, daily morning
sounding of the hold on January 6, 2007 by the ship's carpenter,
and that there was no excess water detected in the hold at the
routine evening sounding at the previous day or from any of the
twice daily soundings on any previous day during the voyage –
including the storm encountered while at sea on December 26,
2006.  According to Plaintiffs, the "only logical inference that
can be drawn from these facts is that the damage to the hull
and the resulting flooding must have occurred during the hours –
mostly in darkness - between normal bilge sounding at 1600 on
January 5th and the discovery of flooding in the Hold at 0800 on
January 6th."  [__Id.__ at 5]

       Plaintiffs contend that the NPFC's determinations are
contrary to the record and the law.  They argue that they are not
required to show precisely when the contact occurred, identify
the exact object which struck the ship, or specifically identify
the object's owners.  [__Id.__ at 21.]  Plaintiffs assert that there
is no basis to conclude that the damage to the hull and a

temporary patch existed prior to January 6, 2007.  They argue that their expert's theory that a container or packing crate struck the ship is reasonable, not speculative, and is sufficient to satisfy their burden of proof under the preponderance of the evidence standard.  [Id. at 22-24.]

B.     **Defendant's Reply**

In its reply, the Government emphasizes that Plaintiffs improperly argue that this Court should apply a preponderance of the evidence standard and thereby act as a fact-finding body in weighing the conflicting evidence already ruled upon by the NPFC. [Governments's Reply at 5-6.]  The Government states that the NPFC considered Mr. Granger's report, along with Plaintiffs' Technical Analysis Report, but was not persuaded as to their credibility.  [Id. at 7.]  It argues that the agency was faced with conflicting evidence as to what caused the incident, where it occurred, and when it occurred.  [Id. at 8.]

It also argues that Plaintiffs have not established each element of OPA's "sole fault third party defense."  The Government repeats its argument that, because the damage occurred outside of United States waters, the proximate cause of the OPA incident was the intentional decision to navigate into United States waters.  [Id. at 10-11.]

## DISCUSSION

### I.   APA Standard

The Court reviews the NPFC's determinations pursuant to 706(2)(A) of the Administrative Procedures Act, which provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) ("APA").

> Where the NPFC has denied a claim and the agency decision has been deemed final, judicial review is available under the APA, 5 U.S.C. §§ 701-706. Under the APA, a court may set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). With regard to judicial review of an agency's construction of a statute which it administers, if Congress has not directly spoken to the precise question at issue, the question for the court is whether the agency's answer is based upon a permissible construction of the statute. Chevron U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). The agency's action may not be set aside so long as it has a "rational basis." Prairie Wood Products v. Glickman, 971 F. Supp. 457, 462 (D. Or. 1997) (citing Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 290 (1974); Friends of the Earth v. Hintz, 800 F.2d 822, 831 (9th Cir. 1986)). Review under this standard is to be searching and careful, but remains narrow, and a court should not substitute its judgment for that of the agency. Mt. Graham Red Squirrel v. Espy, 986 F.2d 1568, 1571 (9th Cir. 1993) (citing Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989)).

Rick Franklin Corp. v. United States Dep't of Homeland Sec., Civil No. 06-1647-SU, 2008 WL 337978, at *3 (D. Or. Feb. 4,

2008).

## II.  <u>Analysis</u>

The NPFC set forth the proper legal definitions in its

7/8/11 Determination, as follows:

> OPA provides that a responsible party for a vessel
> or facility from which oil is discharged or poses
> a substantial threat of a discharge of oil, into
> or upon the navigable waters or adjoining
> shorelines or the exclusive economic zone is
> liable for the removal costs and damages resulting
> from such incident.  33 U.S.C. § 2702(a).

> "Incident" means "any occurrence or series of
> occurrences having the same origin, involving one
> or more vessels, facilities, or any combination
> thereof, resulting in the discharge or substantial
> threat of a discharge.  33 U.S.C. § 2701(14).

> A responsible party is not liable for removal
> costs or damages under section 2702(a) if he
> establishes, by a preponderance of the evidence,
> that the discharge or substantial threat of a
> discharge of oil and the resulting damages or
> removal costs were caused solely by an act or
> omission of a third party . . . if the responsible
> party establishes, by a preponderance of the
> evidence, that the responsible party exercised due
> care with respect to the oil concerned, taking
> into consideration the characteristics of the oil
> and in light of all relevant facts and
> circumstances and took precautions against
> foreseeable acts or omissions of any such third
> party and the foreseeable consequences of those
> acts or omissions 33 U.S.C. § 2703(a)(3)(A) and
> (B).  Section (a) does not apply with respect to
> the responsible party who fails or refuses to
> report the incident as required by law if the
> responsible party knows or has reason to know of
> the incident.  33 U.S.C. § 2703(c)(1).

[NPFC-000585 - NPFC-000586 (footnotes omitted).]  <u>See also</u> <u>Unocal</u>

<u>Corp. v. United States</u>, 222 F.3d 528, 534 (9th Cir. 2000) ("Once

the responsible party establishes these three factors, the third

party who caused the spill officially becomes a 'responsible

party,' and the owner/operator no longer bears any liability for

the spill." (citing 33 U.S.C. § 2702(d)(1)(A)).

The Plaintiffs had the burden to prove that they are

entitled to the OPA's sole third party defense by a preponderance

of the evidence.  33 C.F.R. §§ 136.105(a) and 136.105(e)(6).  The

NPFC concluded that Plaintiffs did not carry that burden, finding

that:

> Claimants have not established a link between a
> container colliding with the hull and the
> substantial threat of a discharge. . . .  There
> must be enough evidence as to the existence of a
> third party and causation in order for the NPFC to
> determine whether the responsible party took
> precautions against foreseeable acts or omissions
> of any such third party and the foreseeable
> consequences of those acts or omissions.

[NPFC-000587.]

The NPFC weighed the conflicting evidence and found

Plaintiffs' theory to be speculative:

> Claimants' argument that a container might have
> hit the vessel and caused the hull damage is
> speculative because they have not provided
> sufficient evidence to link the damage caused by
> an alleged container to the hull damage that
> subsequently resulted in the flooding of the No. 2
> hold.  Stated another way, Claimants' facts do not
> establish, by a preponderance of the evidence that
> a collision with a container caused the hull
> damage and subsequently the substantial threat of
> a discharge.
>
> Because of a lack of specificity of demonstrated
> facts, i.e., that a container might have caused

15

the damage to the hull, the NPFC cannot determine
whether the Claimants exercised due care with
regard to the oil or took precautions against
foreseeable acts or omissions of a third party.

[Id. (footnotes omitted).]

The Court agrees with the NPFC's determination that
"evidence in the administrative record leaves questions as to the
cause of the hull damage[.]" [NPFC-0005887.] For example, the
NPFC noted that there was conflicting evidence in the record as
to when the vessel allegedly collided with a "manmade object."
The Master stated "There was no report or indication that the
vessel made contact with any object during the voyage."
[NPFC-000039.] On the other hand, Mr. Granger identifies a
specific time frame for the collision, between "16:00 hours,
ship's time on the 5th January, 2007 and 08:00 hours ship's time
on the 6th January, which resulted in fracturing of the port side
shell plating and subsequent uncontrolled flooding of the No. 2
cargo hold." [NPFC-000191 - NPFC-000192.] The NPFC reasonably
determined that Mr. Granger's findings conflicted with the
Master's and carpenter's statements, and concluded that the
damage to the hull could have occurred earlier than the
January 5-6, 2007 time frame. [NPFC-0000588.] That is,
Plaintiffs did not sufficiently establish that a third party was
the sole cause of the threatened discharge. Cf. United States v.
Kilroy & Assocs., Inc., No. C08-1019-JCC, 2009 WL 3633891, at *7
(W.D. Wash. Oct. 30, 2009) (finding that "randomized,

16

hypothetical accounts of third-party presence are insufficient to raise a genuine issue of material fact that the *only* reason the Vessel sank was an act of a third party"). Further, this Court will not disturb the NPFC's conclusions regarding the credibility of the conflicting testimony.

The Court notes that OPA's "defenses are narrowly construed, and only in a situation where the discharge was totally beyond the control of the discharging vessel would the responsible party be excused from liability." <u>United States v. English</u>, No. CV00-00016 ACK-BMK, 2001 WL 940946, at * 4 (D. Hawai'i Mar. 28, 2001). Plaintiffs did not meet that burden by a preponderance of the evidence. The NPFC set forth a rational basis for this decision, with reference to the administrative record and applicable case law.

The Court is also not persuaded by Plaintiffs' argument that the NPFC erred in concluding that the vessel caused a substantial threat of a discharge when the Master sought refuge at the Port of Honolulu. But for the decision of the Master and crew to bring the vessel into the Port of Honolulu, there would have been no OPA incident or a substantial threat of a discharge of oil into United States waters at that instant. The NPFC did not fault the Master and crew for this decision and agreed that the TONG CHENG was justified in seeking a port of refuge, but in any event, that decision was the proximate cause of the OPA

17

incident. This conclusion appears to be reasonable and in accordance with law.

Moreover, the Court is mindful of its role in reviewing the NPFC's determinations; under the arbitrary and capricious standard, this Court's scope of review is narrow and deferential. The Court must consider whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977). Agency action is valid "if a reasonable basis exists for [the agency's] decision." Kern Cnty. Farm Bureau v. Allen, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal quotations and citations omitted). The Court finds that a reasonable basis exists for the NPFC's determinations, that the NPFC considered the relevant factors, and that it articulated a rational connection between the facts found and the choices made.

In sum, upon conducting its own searching and careful review of the record, the Court concludes that the NPFC's determinations were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court therefore GRANTS the Government's Motion and DENIES Plaintiffs' Motion.

18

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion for Summary Judgment, filed on August 31, 2012, is HEREBY DENIED, and Defendant's Motion for Summary Judgment, filed on August 31, 2012, is HEREBY GRANTED.  The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 28, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**XIAMEN OCEAN SHIPPING COMPANY, ET AL. V. USA; CIVIL NO. 12-00082 LEK-KSC; ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**